# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA       :

        v.                              :        **CRIMINAL NO.  22-CR-00013-WB**

OMAR WHITE OLIVER              :

## GOVERNMENT'S SENTENCING MEMORANDUM

Defendant Omar White Oliver, a three-time convicted felon and admitted drug dealer, made false and fraudulent applications for Paycheck Protection Program ("PPP") loans in the total amount of $373,494. Although his company had no employees and no payroll expenses, Oliver claimed that in one quarter he had paid wages of nearly $225,000 to eight employees. Through this scheme, he defrauded the Small Business Administration ("SBA") out of $186,747, then promptly laundered the loan proceeds. This was not the first time that Oliver has committed crimes. Oliver has spent a significant part of his adult life in prison, and has shown time and again that he has no regard for the law. He is, at least, an economic danger to government programs and financial institutions. For these reasons, as well as for the reasons provided below, the government recommends a sentence of incarceration within the advisory guideline range of 30 to 37 months.

The Third Circuit has set forth a three-step process which the district courts must follow in compliance with the Supreme Court's ruling in *United States v. Booker*, 543 U.S. 220 (2005):

(1) Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before *Booker*.

(2) In doing so, they must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the

Guidelines calculation, and take into account our Circuit's pre-*Booker* case law, which continues to have advisory force.

(3) Finally, they are to exercise their discretion by considering the relevant § 3553(a) factors in setting the sentence they impose regardless whether it varies from the sentence calculated under the Guidelines.

*United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006) (quotation marks, brackets, and citations omitted) (citing *United States v. King*, 454 F.3d 187, 194, 196 (3d Cir. 2006).

At the third step of the sentencing process, the Court must consider the advisory guideline range along with all the pertinent considerations of sentencing outlined in 18 U.S.C. § 3553(a) in determining the final sentence. "The record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations omitted).

The government explains below its view of the proper consideration in this case of the advisory guideline range and of the Section 3553(a) factors, which support a within-guideline sentence in this case.

I.    **BACKGROUND**

On November 30, 2022, the defendant pled guilty to one count of bank fraud, one count of attempted bank fraud, and one count of money laundering, in violation of 18 U.S.C. §§ 1344(2) and 1957, respectively. During his plea colloquy, the defendant admitted that he made the fraudulent PPP loan applications, knowing that they were false, then used the proceeds of the first, successful application on unauthorized purposes. Oliver admitted that he used $70,000 of loan funds to purchase a Range Rover automobile, the subject of Count Four,

knowing that the PPP program did not permit this. As to the second loan application, the subject

of Count Two, which application SBA denied, Oliver admitted that the profit and loss statements

submitted with it were blatantly false.

II.   **SENTENCING CALCULATION**

    A.   **Statutory Maximum Sentence.**

The maximum sentence that may be imposed on the defendant is 70 years' imprisonment,

three years of supervised release, a $2,250,000 fine and a $300 special assessment, along with

restitution of $166,527.31 and forfeiture.[1]

    B.   **Sentencing Guidelines Calculation.**

The Probation Office correctly calculated the defendant's advisory guideline range as

follows: the base offense level is 7, per USSG § 2B1.1. PSR ¶ 30. Ten levels are added pursuant

to USSG § 2B1.1(b)(1)(F) because the loss is more than $150,000 and less than $250,000. *Id.* As

the defendant was convicted under 18 U.S.C. § 1957, one level is added pursuant to USSG §

2S1.1(b)(2)(A), PSR ¶ 31, for an adjusted offense level of 18. PSR ¶ 35. Three levels are

subtracted per USSG § 3E1.1(a) and (b), for a total offense level of 15. PSR ¶ 39.

The defendant has a lengthy criminal history of drug and theft offenses, marked by

violence toward victims and law enforcement. As an adult, he was convicted of simple assault

and conspiracy in 2022; conspiracy to distribute in excess of 50 grams of crack cocaine in federal

---

[1]     On each of Counts One and Two (bank fraud and attempted bank fraud), the defendant
faces 30 years' imprisonment, 3 years of supervised release, a $1,000,000 fine and a $100 special
assessment. On Count Four (money laundering), he faces 10 years' imprisonment, 3 years of
supervised release, a $250,000 fine and a $100 special assessment. Restitution of $166,527.31 is
mandatory, representing the amount of the loan underlying Count One, less the sums that the
defendant paid to SBA prior to the guilty plea hearing.

court in the Middle District of Pennsylvania, also in 2022; manufacture, delivery or possession

with intent to manufacturer or deliver cocaine in Delaware County in 2012; and possession of

contraband, also in Delaware County, in 2013. These convictions yield nine criminal history

points, which place the defendant in Criminal History Category ("CHC") IV. PSR ¶ 51. A person

at offense level 15 in CHC IV faces a recommended Sentencing Guideline range of 30 to 37

months in prison.[2]

III.   **ANALYSIS**

A thorough consideration of all of the sentencing factors set forth in 18 U.S.C. § 3553(a)

suggests that the most appropriate sentence is one within the advisory guideline range of 30 to 37

months.

The Supreme Court has declared: "As a matter of administration and to secure

nationwide consistency, the Guidelines should be the starting point and the initial benchmark."

*Gall v. United States*, 552 U.S. 38, 49 (2007).   "These requirements mean that '[i]n the usual

---

[2]     In their plea agreement, at paragraph 11(b), page 8, the parties agreed that they will not
seek either an upward or a downward departure under the sentencing guidelines. Despite this
stipulation, during the period for comment on the draft PSR the defense suggested to the
Probation Officer that two downward departures might be appropriate: (1) a departure pursuant
to USSG § 5H1.6 for extraordinary family responsibilities, and (2) a departure pursuant to USSG
§ 4A1.3(b)(1) on the ground that one of the defendant's convictions, for possessing contraband
in prison, might cause his criminal history category to substantially over-represent the
seriousness of his criminality or the likelihood that he will commit other crimes, because some
persons who possess contraband in prison are not convicted of a crime, but are instead dealt with
within the prison's disciplinary system. The Probation Officer notes these suggestions in the final
PSR at paragraphs 131 and 133, pp. 31-32.

Because the defendant would be in breach of the plea agreement should he seek a
downward departure from the Court; because the defendant's situation is not sufficiently
extraordinary on either basis to warrant a departure; and because the Court can consider both
arguments when framed as variance requests, the government treats both as variance requests.
The government opposes both, as explained below at pp. 7 through 10.

sentencing, . . . the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range." *Peugh v. United States*, 133 S. Ct. 2072, 2083 (2013) (quoting *Freeman v. United States*, 131 S. Ct. 2685, 2692 (2011) (plurality opinion); ellipsis in original). "Common sense indicates that in general, this system will steer district courts to more within-Guidelines sentences." *Peugh*, 133 S. Ct. at 2084. "The federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing." *Id.*

In addition, this Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

The defendant engaged in a serious offense. Despite the fact that his company had no employees and no payroll expenses, Mr. Oliver claimed that in one quarter, he had paid wages of nearly $225,000 to eight employees. Through these blatant falsehoods and others, the defendant defrauded the SBA out of $186,747, then promptly laundered the loan proceeds by purchasing a Range Rover automobile, among other items. His crime falls squarely within the class of cases to which the applicable fraud and money laundering guidelines are addressed, and thus

consideration of the nature of the offense, § 3553(a)(1), counsels in favor of the guideline sentence.

Further, the defendant's history supports the need for significant incarceration. After amassing six juvenile adjudications, PSR ¶¶ 40-45, Mr. Oliver was convicted four times as an adult. At age 22, he was convicted for conspiracy and a violent simple assault, as outlined in the PSR, ¶ 46: the defendant went inside a drugstore on North Broad Street with others and tried to steal merchandise. As he was leaving the store, he punched one store employee in the face and punched another employee multiple times, wrestling him to the ground and causing cuts to the employee's face, hand and arm. The employee's arm laceration required ten stitches. During this episode, the defendant also kicked a Temple University police officer. PSR ¶ 46. Also in 2002, the defendant was convicted in the Middle District of Pennsylvania for conspiring to distribute in excess of 50 grams of crack cocaine, for which he was sentenced to 87 months in prison followed by five years of supervised release. PSR ¶ 47. While on supervised release, in 2013, he was again convicted of a felony drug offense, possession with intent to deliver cocaine and crack cocaine.[3] The defendant committed this offense in Delaware County, receiving a sentence of three to six years in prison. PSR ¶ 48. As outlined in the PSR, the defendant resisted this arrest. Also in 2013, while in prison, the defendant was convicted for possession of contraband, a cellular phone that he had secreted on his person. PSR ¶ 49. Because the Delaware County

---

[3]     Earlier, in 2010, Mr. Oliver violated his federal supervised release, when he was arrested in Texas after a traffic stop. The defendant was a passenger in a car driven by his cousin, a felon. Upon a search of the car, police discovered a package of 21 pounds of marijuana. The defendant did not have permission to travel to Texas, was not permitted to associate with a felon, and did not timely provide notification of the contact with law enforcement to his probation officer. Ultimately, the defendant was not charged by Texas authorities, PSR ¶ 47, fn. 5, but was sentenced to six months of confinement for the violation.

- 6 -

cocaine PWID violated the defendant's federal supervised release, he was not released from the resulting federal sentence until April 2017. He has spent a significant part of his adult life in prison. It is clear that the recommended term of imprisonment is required "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." § 3553(a)(2). Furthermore, the recommended sentence of incarceration affords adequate deterrence to others who would commit a similar offense, and protects the public from further crimes of the defendant, for at least as long as he remains incarcerated. *Id.*

In addition, adherence to the recommended guideline range is the only course for assuring that the defendant's sentence is consistent with those imposed nationwide on similarly situated offenders, and thus complying with Section 3553(a)(6) and avoiding undue disparity.

There is no need in this case to adjust the sentence in order "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . ." § 3553(a)(2)(D). Also, restitution is not an issue in this case, as the defendant has made full restitution to the SBA. § 3553(a)(7).

At the same time, the defendant has not set forth any persuasive argument for leniency. The defendant asserts that his responsibility to care for his family calls for a reduced sentence. As explained earlier, fn. 2 p. 4, the defendant should not receive a downward departure from the advisory guideline range on this basis, as he has agreed in the plea agreement not to seek any departure, and in any event, his family situation is not sufficiently extraordinary to warrant a departure. Likewise, while this Court has authority to consider family circumstances as a basis for a reduced sentence apart from the guideline calculation, the facts do not warrant such leniency either.

The defendant argues that this Court should sentence below the guideline range on the

basis of his extraordinary family responsibilities, pursuant to USSG § 5H1.6. Those purportedly

extraordinary responsibilities are that he and his wife have moved to South Florida, where they

have no family to help them take care of four young children, including twins under the age of

one. But the facts as set out in the PSR show that defendant simply does not qualify for such a

variance, for several reasons.

First, the defendant has refused to provide the Court with any financial information

concerning his wife, despite the Probation Officer's repeated requests for that information. PSR

¶¶ 104, 113. Without knowing his wife's income, expenses, assets, and liabilities, it is impossible

to ascertain the defendant's actual net worth. PSR ¶¶ 104, 131. Absent an accurate net worth

figure for Mr. Oliver, the Court cannot determine, as required under U.S.S.G. §§ 5H1.6, whether

the defendant's service of a sentence within the applicable guideline range would cause a

substantial, direct, and specific loss of essential caretaking or essential financial support to his

family; or whether the loss of caretaking and financial support substantially exceeds the harm

ordinarily incident to incarceration for a similarly situated defendant; or whether that loss of

caretaking or financial support is one for which no effective remedial or ameliorative programs

reasonably are available, making his caretaking or financial support irreplaceable to his family.

Relatedly, even if the defendant had apprised the Probation Officer of his whole financial

picture, which he did not, the limited information provided shows that the defendant has more

]than sufficient resources available to afford childcare assistance during any period of

incarceration. The PSR shows further that, to a certain extent, any predicament that exists may be

of Mr. Oliver's own making. He was indicted in January 2022, and was arrested shortly

thereafter. In April 2022, he may have overextended himself by purchasing his current $1.3

million dollar, 3,500 square foot home on which he now must pay two large mortgages.

https://www.zillow.com/homedetails/15124-SW-36th-St-Davie-FL-33331/67831085_zpid/.  In
addition, each month, he pays more than $3,400 on a car note. It seems that with some
economizing, childcare issues could be addressed. In addition, although the defendant's family
members do not live in South Florida, the defendant and his wife appear to have the strong
support of family, who could perhaps assist with childcare during visits.

In sum, as the Sentencing Commission recognized, *see* U.S.S.G. § 5H1.6, inconvenience
and even harm to a criminal defendant's family are normal results of a criminal act, and
ordinarily do not warrant leniency. The Commission's judgment is sound. Such leniency should
not be afforded by way of a variance here, given the severity of the defendant's offenses, the
need for the Court to avoid disparate sentences for like offenders, the defendant's refusal to
provide his full financial picture to the Court, and the fact that the defendant's family has the
means to maintain itself in his absence.

The defendant also asserts that his criminal history category substantially over-represents
the seriousness of his criminal history or the likelihood that he will commit other crimes,
apparently seeking a variance on this basis. *See* USSG § 4A1.3(b)(1). He points to his prior
conviction for possessing contraband in prison, arguing that prison contraband is often treated as
a disciplinary infraction rather than being charged criminally. Given the circumstances of the
defendant's extensive criminal history, the government believes that Criminal History IV
accurately reflects, and does not overstate, the defendant's criminality. Mr. Oliver is a recidivist
several times over, having committed a violent simple assault, followed by two separate felony
drug offenses, the second of which he committed while on federal supervised release. He was
convicted of possessing contraband while incarcerated in connection with the second felony drug
charge. The contraband in question was a cellular phone that he had hidden on his person, found

only after a strip search. PSR ¶ 49. Contraband in prison, including devices which a prisoner can use to commit additional crimes, is a significant problem. The fact that some offenders might be treated more leniently than the defendant was does not alter the fact that his unlawful activity was properly addressed by criminal charges.

Additionally, although the government is not seeking an upward variance in this case based upon the large amount of intended loss (approximately $186,747, representing the amount of the attempted bank fraud charged in Count Four), consideration of intended loss is essential in measuring culpability. A person who attempts to steal $5 by making a false statement is plainly less culpable, and worthy of incapacitation and punishment, than someone who tries to steal $1 million through a false statement, and no sensible sentencing authority would suggest they should be treated the same just because both were caught before they could enjoy the fruit of their efforts.[4] Thus, since the very inception of the Guidelines, the Commission, without objection by Congress, has called for assessment of intended as well as actual loss. Here, we ask the Court to consider the intended loss amount in determining where within the 30 to 37 month guideline range to sentence Mr. Oliver, for the reasons explained below.

The very first iteration of the fraud guideline, § 2F1.1, effective November 1, 1987, called in its text for assessment of "estimated, probable, or intended loss." At the same time, the theft guideline, § 2B1.1, referred to the "value of the property taken." The Commission soon reconciled these provisions. In Amendment 7 (June 15, 1988), the Commission changed the text of the theft guideline to refer to "loss," and added an application note stating, "In cases of

---

[4]     It would likewise be irrational to fully punish the person who steals $1 million, while letting off entirely the person who attempts exactly the same theft but is caught a moment before possible success.

partially completed conduct, the loss is to be determined in accordance with the provisions of §2X1.1 (Attempt, Solicitation, or Conspiracy Not Covered by a Specific Guideline)." At the same time, in Amendment 30 (June 15, 1988), the Commission likewise amended the text of § 2F1.1 to refer only to "loss," and amended the application notes to § 2F1.1 to provide: "Valuation of loss is discussed in the Commentary to §2B1.1 (Larceny, Embezzlement, and Other Forms of Theft)."

In subsequent amendments, such as Amendment 393 (Nov. 1, 1991), the Commission consistently repeated and clarified the direction to include intended loss in the determinations regarding §§ 2B1.1 and 2F1.1, ultimately merging those provisions into the current § 2B1.1 addressing all theft and fraud offenses. The current iteration of the definition of "loss" stems from Amendment 617 (Nov. 1, 2001), in which the Commission resolved circuit conflicts over prior definitions of "loss" while "retain[ing] the core rule that loss is the greater of actual and intended loss." *Id*. The Commission stated that it did so because in "cases in which intended loss is greater than actual loss, the intended loss is a more appropriate initial measure of the culpability of the offender." *Id.*

Notably, every one of those changes was submitted to Congress to allow an opportunity for disapproval. *See, e.g.*, Sentencing Guidelines for United States Courts, 53 Fed. Reg. 15530-01, 1988 WL 271139 (Apr. 29, 1988) (regarding Amendments 7 and 30); Amendments to the Sentencing Guidelines for United States Courts, 56 Fed. Reg. 22762-01, 1991 WL 306198 (May 16, 1991) (regarding Amendment 393); Sentencing Guidelines for United States Courts, 66 Fed. Reg. 30512-01 (June 6, 2001) (regarding Amendment 617).

That is consistent with the Commission's approach to all commentary. At the very outset,

in the Sentencing Reform Act, Congress required district courts to consider "the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission" in imposing a sentence. 18 U.S.C. § 3553(b)(1). Congress further provided, in 28 U.S.C. § 994(x), that to promulgate or amend a guideline, the Commission must comply with the notice-and-comment procedures for rulemaking by executive agencies. *See* 5 U.S.C. § 553(b) and (c). And under 28 U.S.C. § 994(p), the Commission must "submit to Congress" any proposed amendment to the Guidelines, along with "a statement of the reasons therefor." Proposed amendments generally may not take effect until 180 days after the Commission submits them to Congress. *Id.* Although Sections 994(p) and (x) do not apply to policy statements and commentary, the Commission's rules provide that "the Commission shall endeavor to include amendments to policy statements and commentary in any submission of guideline amendments to Congress." U.S. Sentencing Comm'n R. 4.1. And indeed the Commission has submitted for Congress' review every pertinent amendment to the fraud guideline regarding loss.

In this light, it is apparent that the decision in *United States v. Banks* has nothing whatsoever to do with the propriety or sensibility of considering intended loss when imposing a sentence for fraud. *Banks* instead rests on principles of administrative law, and the ruling in *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019), that an administrative agency's interpretation of a regulation may not expand the scope of an otherwise unambiguous regulation. It is apparent that this notion, developed in the review of actions of other administrative agencies, is an exceptionally poor fit in the application of the Guidelines. The Sentencing Guidelines, from their very inception, were conceived as a single body of text in which guideline directives are amplied by explanatory commentary, and all portions are subject to rejection by Congress.

Most notably, the holding of *Banks* that the application note regarding intended loss is

not binding does not restrict in any way this Court's power to consider that commentary in

reaching a discretionary judgment regarding the final sentence. The *Banks* Court explicitly

recognized that, stating, "Our holding should not be read as imposing any restriction on a district

court's discretion to vary a sentence when appropriate." *United States v. Banks*, 55 F.4th 246,

258 n. 58 (3d Cir. 2022).

At the end of the day, the Sentencing Commission remains the expert agency established

for the purpose of promoting consistency in sentencing, by examining sentencing practices

nationwide and suggesting sentencing ranges for specific offenses. *See generally Peugh v.*

*United States*, 569 U.S. 530, 535-37 (2013). And with regard to intended loss, it has always

called for assessment of that fact, a determination that comports with sentencing courts' historic

views and, as stated above, with basic common sense. Thus, while *Banks* directs this Court to

consider only actual loss when calculating the guideline range, for the sole reason that under the

current structure of the Guidelines "intended loss" is mentioned in an application note instead of

the guideline itself, the decision does not limit in any way this Court's authority at the final stage

of the sentencing assessment to consider all pertinent information, including the consistent and

entirely appropriate view of the Sentencing Commission that a greater intended loss warrants

greater punishment. For these reasons, we ask the Court to consider the $186,747 in intended

loss when deciding where in the final guideline range to sentence Mr. Oliver.

Accordingly, as explained above, all the appropriate considerations of sentencing, such as

the nature of the offense and the character of the offender, call for substantial incarceration in

order to protect society from his otherwise persistent criminal conduct.

Therefore, in sum, all of the appropriate considerations of sentencing favor the imposition

in this case of a within-guideline sentence.  As noted, the Sentencing Guidelines present "the

lodestone of sentencing," *Peugh*, 133 S. Ct. at 2084, and that guide is once again persuasive in this case.

## IV.  CONCLUSION

For these reasons, the government recommends that the Court impose a sentence within the advisory guideline range of 30 to 37 months in prison.

Respectfully submitted,

JACQUELINE C. ROMERO
United States Attorney

*/s Mary E. Crawley*
MARY E. CRAWLEY
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that this Sentencing Memorandum has been served on the Filing User

identified below through the Electronic Case Filing (ECF) system:

Anna M. Durbin, Esquire
Peter Goldberger, Esquire
50 Rittenhouse Place
Ardmore PA 19003-2227

*/s Mary E. Crawley*
MARY E. CRAWLEY
Assistant United States Attorney

DATED: May 10, 2023.